# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## BECKLEY DIVISION

DEANNA L. BROOKS,

          Plaintiff,

v.                               CIVIL ACTION NO. 5:06-cv-00694

CHASE HOME FINANCE, INC., and
UNION SECURITY LIFE INSURANCE
COMPANY,

          Defendants.

## MEMORANDUM OPINION

Pending before the Court is Defendant Union Security Life Insurance Co.'s Motion for Summary Judgment [Docket 47]. Plaintiff filed the instant action on August 11, 2006 in the Circuit Court of Raleigh County, West Virginia, alleging breach of an insurance contract, violations of the West Virginia Insurance Regulations, and bad faith.[1] Defendant removed the action to this Court on September 7, 2006. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship between the parties exists and the amount in controversy at the time of removal exceeded $75,000, exclusive of interest and costs.

---

[1] Defendant Chase Home Finance, Inc. was originally named as a defendant in this action, however, it was voluntarily dismissed by Plaintiff on December 27, 2007.

*I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY*

The material facts are not in dispute and are taken in large part from the Joint Stipulations of Fact [Docket 58] filed by the parties. In or around June 2004, Plaintiff's husband, Lloyd Brooks, took out a home equity loan from Chase Home Finance, Inc. (Chase). In connection with the loan, Mr. Brooks purchased a single-life credit insurance policy from Defendant that was designed to pay off the loan in the event of his death.

Mr. Brooks passed away approximately two years later, on June 7, 2006. Upon receiving her June monthly loan statement from Chase, Plaintiff contacted Mr. Brooks's loan officer, Dianna L. Janney, to inquire whether it was necessary for her to continue making the loan payments in light of the credit life insurance policy. Ms. Janney informed Plaintiff that indeed she was required to make the payments while the insurance company processed the claim. During that meeting, Plaintiff provided Ms. Janney with a copy of Mr. Brooks's death certificate and requested that Ms. Janney submit her insurance claim to Defendant. Ms. Janney then completed the requisite paperwork and submitted the claim to Defendant on June 28, 2006. The submission, however, did not include Mr. Brooks's loan account statements, which would have included the remaining account balance. Defendant received notification of the potential claim that same day.

By letter dated June 28, 2006, Defendant notified Plaintiff of its receipt of her notification of claim, advised her to keep her loan account in good standing, and stated that her claim would be processed within fifteen days. Shortly thereafter, Defendant began investigating the claim, however, it was unable to complete its investigation due to the missing loan account statements. In the meantime, Plaintiff received her July 2006 monthly statement from Chase. Again, Plaintiff contacted Ms. Janney, who reminded Plaintiff that she was required to keep the loan payments

current until the loan was paid off. After that conversation, Ms. Janney assembled the requisite loan account statements and sent them to Chase Financial Claims, which forwarded them to Defendant on August 11, 2006.

As was previously noted, Plaintiff initiated the instant lawsuit on August 11, 2006 – the same day that Defendant received Plaintiff's loan account statements from Chase. The complaint was served on Defendant on August 17, 2006, and reviewed by Linda Silva, an employee in Defendant's litigation department, on August 18, 2006. Ms. Silva then logged the matter into Defendant's computer system on August 23, 2006, and Defendant's claims department became aware of the lawsuit on August 24, 2006. On August 21, 2006, however, the claim was paid in full. Chase then credited Plaintiff for her overpayment by sending her a check in the amount of $151.33 on November 22, 2006. Although there is no dispute that the claim has been paid, Plaintiff maintains that she is owed attorney fees and damages for annoyance and inconvenience under the West Virginia Unfair Trade Practices Act (UTPA) and *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73 (W. Va. 1986), in connection with her filing of the instant lawsuit for the policy proceeds. Discovery has closed and Defendant filed the instant summary judgment motion on May 2, 2008. The motion is now ripe for the Court's review.

## II. APPLICABLE LAW

Because this Court has jurisdiction based on complete diversity between the parties, this case is governed by West Virginia law. *See Erie R.R. v. Thompkins*, 304 U.S. 64 (1938) (requiring federal courts sitting in diversity to apply the substantive law of the state in which they sit).

*A.     Summary Judgment Standard*

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment is inappropriate, however, if there exist factual issues that reasonably may be resolved in favor of either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). When construing such factual issues, it is well established that the Court must view the evidence "in the light most favorable to the [party opposing summary judgment]." *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

The moving party may meet its burden of showing that no genuine issue of fact exists by use of "depositions, answers to interrogatories, answers to requests for admission, and various documents submitted under request for production." *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). Once the moving party has met its burden, the burden shifts to the nonmoving party to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. at 323. Even undisputed facts may give rise to multiple inferences, however, "[o]n summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

"[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 256. "The mere existence of a scintilla of

4

evidence" in support of the nonmoving party is not enough to withstand summary judgment; the judge must ask whether "the jury could reasonably find for the plaintiff." *Id.* at 252.

      *B.*      *Unfair Trade Practices Act*

Insurance claims made in West Virginia are governed in part by UTPA, W. Va. Code § 33-11-1 *et seq.* Specifically, UTPA enumerates a list of unfair claim settlement practices, two of which are applicable to this case:

> Unfair claim settlement practices.- No person shall commit or perform with such frequency as to indicate a general business practice any of the following:
> . . .
> (b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies;
> . . .
> (g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by the insureds, when the insureds have made claims for amounts reasonably similar to the amounts ultimately recovered[.]

§ 33-11-4(9). It is well-established that, to maintain a private cause of action under UTPA, a plaintiff must establish more than a single violation, rather, the evidence must show a pattern or practice such to constitute a "general business practice." Syl. pt. 4, *Dodrill v. Nationwide Mut. Ins. Co.*, 491 S.E.2d 1 (W. Va. 1996). The pattern or practice may be found to arise from a single claim, however, if "viewing the conduct as a whole . . . the practices constitute multiple violations of the statute and are sufficiently pervasive or sufficiently sanctioned by the insurance company that the conduct can be considered a 'general business practice' and can be distinguished by fair minds from an isolated event." *Id.* at 13.

The West Virginia Code of State Regulations (CSR) further clarifies insurer practices that may constitute an UTPA violation particularly under W. Va. Code § 33-11-4(9)(b). Specifically, the CSR requires an "insurer, upon receiving notification of a claim [to], within fifteen (15) working

5

days, acknowledge the receipt of such notice unless full payment is made within such period of time." W. Va. Code R. § 114-14-5.1. Within that fifteen day time frame, insurers are also required to provide the insured with "necessary claim forms, instructions, and reasonable assistance so that first-party claimants can comply with the policy conditions and the insurer's reasonable requirements[,]" § 114-14-5.4, provide "a notification of all items, statements and forms, if any, which the insurer reasonably believes will be required of such claimant[,]" § 114-14-6.2(b), and "commence an investigation" of the claim, § 114-14-6.2(a). The investigation is to be "promptly conduct[ed,] diligently pursue[d,] fair[,] and objective[,] and may not unreasonably delay resolution by persisting in seeking information not reasonably required for or material to the resolution of a claim dispute." § 114-14-6.1.

Upon completion of the investigation, an insurer has ten days to "deny the claim in writing or make a written offer, subject to policy limits." § 114-14-6.3. The CSR provides specifically for instances where lengthy investigation is required:

> If the insurer needs more than thirty (30) calendar days from the date that a proof of loss from a first-party claimant or notice of claim from a third-party claimant is received to determine whether a claim should be accepted or denied, it shall so notify the claimant in writing within fifteen (15) working days after the thirty-day period expires. If the investigation remains incomplete, the insurer shall provide written notification of the delay to the claimant every forty-five (45) calendar days thereafter until the investigation is complete. All such notifications must set forth the reason(s) additional time is needed for investigation.

§ 114-14-6.7.

*C.     Bad Faith*

The seminal case on first-party bad faith in West Virginia is *Hayseeds, Inc. v. State Farm Fire & Cas.*, 352 S.E.2d 73 (W. Va. 1986). In *Hayseeds*, the West Virginia Supreme Court of Appeals held: "Whenever a policyholder substantially prevails in a property damage suit against its

insurer, the insurer is liable for: (1) the insured's reasonable attorneys' fees in vindicating its claim; (2) the insured's damages for net economic loss caused by the delay in settlement, and damages for aggravation and inconvenience." *Id.* at syl. pt. 1. "An insured 'substantially prevails' . . . when the action is settled for an amount equal to or approximating the amount claimed by the insured immediately prior to the commencement of the action, as well as when the action is concluded by a jury verdict for such an amount." Syl. pt. 1, *Jordan v. Nat'l Grange Mut. Ins. Co.*, 393 S.E.2d 647 (W. Va. 1990).

There is a clear, "bright-line" standard for recovery in first-party bad faith cases: "[O]nce a demand is unmet by an insurance carrier, a policyholder need only prove he or she has substantially prevailed." *Miller v. Fluharty*, 500 S.E.2d 310, 320-21 (W. Va. 1997). A policyholder is not required to make a demand before filing a lawsuit, however, the filing of a lawsuit is but one of the many factors a court is to consider when examining a first-party bad faith claim:

> [W]hen examining whether a policyholder has substantially prevailed against an insurance carrier, a court should look at the negotiations as a whole from the time of the insured event to the final payment of the insurance proceeds. If the policyholder makes a reasonable demand during the course of the negotiations, within policy limits, the insurance carrier must either meet that demand, or promptly respond to the policyholder with a statement why such a demand is not supported by the available information. The insurance carrier's failure to promptly respond is a factor for courts to consider in deciding whether the policyholder has substantially prevailed in enforcing the insurance contract, and therefore, whether the insurance carrier is liable for the policyholder's consequential damages under *Hayseeds*[] and its progeny.

*Miller*, 500 S.E.2d at 321. Nevertheless, a plaintiff must show that an "attorney's services were necessary to obtain payment of the insurance proceeds." Syl. pt. 1, *Jordan*, 393 S.E.2d 647. In other words, the plaintiff must show that "but for" the attorney's services, the plaintiff would not have been able to recover the policy proceeds. *Hadorn v. Shea*, 456 S.E.2d 194, 198 (W. Va. 1995). "[T]he insured must show more than *post hoc, ergo propter hoc*, that is, the insured must show more

7

than the fact that a settlement for all or substantially all of the claim was reached after the action was brought against the insurer." *Jordan*, 393 S.E.2d at 652.

## III. ANALYSIS

### A. Genuine Issue of Material Fact

Plaintiff attempts to create a genuine issue of material fact in her Memorandum in Response to Defendant's Motion for Summary Judgment [Docket 50]. In that filing, Plaintiff takes issue with Defendant's claim that it did not receive the necessary paperwork to process Plaintiff's claim until August 11, 2006. In short, Plaintiff states that this claim "defies logic and contradicts the letter dated June 28, 2006[.]" (Docket 50 at 3.) Plaintiff's issue, however, is off-base. The letter clearly states that the claim "has been received" and requests that Plaintiff "allow fifteen (15) business days for [the] claim to be processed." (Docket 47-5.) It makes no mention of whether the necessary paperwork was complete. Moreover, Defendant's assertion is clearly supported by the affidavit submitted by Defendant's Claims Manager, Jeffrey Richardson. (Docket 47-4 ¶¶ 5-7.) Thus, there is no genuine dispute that Defendant did not receive all the relevant documentation necessary to process the claim until August 11, 2006.

Next, Plaintiff states that Defendant's "claim that they could not have known of Mrs. Brooks' lawsuit until the 23rd or 24th of August . . . ignores the fact that the Defendant was served via its registered agent on August 17, 2006." (Docket 50 at 3.) Again, Plaintiff misstates Defendant's assertion. In its summary judgment motion, Defendant cites the affidavit provided by Jeffrey Richardson for the proposition that the *claims department* was not aware of the lawsuit until August 24, 2006. (Docket 47-4 ¶ 10) (emphasis added). Mr. Richardson does not purport to speak

8

for Defendant as a whole, rather, he speaks only on behalf of the claims department, which was the department ultimately responsible for payment of Ms. Brooks' claim.

Finally, Plaintiff attempts to create a genuine issue of fact by stating that Defendant's assertion that "this case was not registered or logged into the system until two days after the claim was paid[] is a question of fact for the jury to decide."[2] (Docket 50 at 3.) Defendant meets its burden of showing that there is no genuine issue of material fact regarding this statement by offering the affidavit of Linda Silva, who works in its litigation unit. In her affidavit, Ms. Silva states that she "opened a 'new matter'" in the computer system on August 23, 2006. (Docket 47-8 ¶ 4.) Thus, the burden shifts to Plaintiff to "make a showing sufficient to establish the existence of" a genuine issue as to that statement. *Celotex Corp. v. Catrett*, 477 U.S. at 323. Plaintiff's bald assertion that the claim "is a question of fact for the jury" is not enough to create a genuine issue. *See Rountree v. Fairfax County Sch. Bd.*, 933 F.2d 219, 223 (4th Cir. 1991) (citing *Celotex*, 477 U.S. at 324) ("The arguments of counsel, absent any evidence such as sworn affidavits accompanying objections to a motion for summary judgment, fail to meet the evidentiary standard necessary to create a genuine issue of material fact."). Because Plaintiff has failed to submit any affidavit, deposition

---

[2] The Court notes that, because Plaintiff did not demand a jury, this case is set for a bench trial. Nonetheless, the Court will treat Plaintiff's statement as an assertion that the issue is not one to be resolved by summary judgment.

testimony, or other evidence in support of her claim,[3] she has failed to create a genuine issue of material fact to preclude summary judgment.

      B.      *Violation of UTPA*

The Court first examines Defendant's compliance with UTPA and the applicable insurance regulations. First, regarding W. Va. Code § 33-11-4(9)(g), the Court finds that section to be inapplicable to the instant lawsuit because Defendant did not "offer[] substantially less than the amount[] ultimately recovered." *Id.* In fact, no offer was made at all – the full proceeds were tendered upon completion of the investigation without any form of negotiation ever taking place.

Next, turning to W. Va. Code § 33-11-4(9)(g) and the clarifying regulations in the CSR, the letter from Defendant to Plaintiff dated June 28, 2006 fulfills Defendant's duty under the CSR to acknowledge receipt of the notice of claim. *See* W. Va. Code R. § 114-14-5.1. Upon receipt of the claim, Defendant complied with the CSR by initiating and continuing an active investigation that persisted until the claim was resolved on August 21, 2006. (Docket 47-4 ¶ 9); *see* W. Va. Code R. § 114-14-6.1 and -6.2(a). Once the investigation was complete on August 11, 2006, Defendant paid the claim within ten days, on August 21, 2006. (Docket 47-4 ¶ 7; Docket 47-7); *see* W. Va. Code R. § 114-14-6.3. Defendant was also required to provide Plaintiff with "necessary claim forms, instructions, and reasonable assistance," W. Va. Code R. § 114-14-5.4, and to notify Plaintiff "of all [required] items, statements and forms," § 114-14-6.2(b). There is no evidence in the record

---

[3] Counsel for Plaintiff states that he "had not spent considerable time and money prosecuting this matter as it appeared quite clear that any reasonable insurance company . . . would simply . . . address the very reasonable payment for annoyance and aggravation and the nominal attorney fees and [c]ourt costs incurred [by settling the case]." (Docket 50 at 6 n.1.) The Court notes that anticipation of settlement, regardless of how reasonable settlement may seem to counsel, is no substitute for developing facts on matters that may be addressed at the summary judgment stage or at trial.

regarding Defendant's alleged noncompliance with these requirements. Thus, Plaintiff has failed to meet her burden of producing evidence that Defendant violated any of the above regulations. Because she has presented no evidence of such violations, there is no genuine issue of fact and Defendant is entitled to summary judgment as to these violations.

Defendant was also required to notify Plaintiff within fifteen working days if it required more than thirty days to investigate the claim. § 114-14-6.7. The only evidence on this issue is Plaintiff's responses to a short series of questions during her deposition. In her deposition, Plaintiff was asked whether she had any contact with Defendant between the June 28, 2006 letter and her meeting with Ms. Janney in July 2006. She replied, "I'm not real sure, sir. I'm not really sure, you know. I may have got [sic] some letters, but I don't remember it. If I did, I brought them to [my attorney]. I brought him everything." (Docket 47-2 at 5.) Later, she was asked whether she had any contact with Defendant other than receiving letters in June and August. She responded, "No, sir." (*Id.* at 6.) She was then asked, "Did they ever call and ask you for any additional information?", to which she answered, "I don't recall." (*Id.*) The Court is not convinced that this evidence amounts to more than a "mere scintilla" to meet Plaintiff's burden at the summary judgment stage.

Even if that evidence does amount to more than a "mere scintilla," Plaintiff has only presented evidence that Defendant violated *one* of the applicable regulations. To sustain a cause of action under UTPA, Plaintiff is required to show a pattern or practice of *multiple* violations to establish a "general business practice." Syl. pt. 1, *Dodrill*, 491 S.E.2d at 13 (requiring practices to "constitute multiple violations"). Plaintiff here has neither alleged nor presented evidence that Defendant has engaged in multiple violations that establish a general business practice to support

11

a claim under UTPA. Without evidence of such a general business practice, there is no genuine issue of material fact and Defendant is entitled to summary judgment on Plaintiff's UTPA claim.

    *C.*    *Bad Faith*

The Court notes that it is not entirely clear that Plaintiff's filing of the instant lawsuit constitutes a "demand" under *Miller*, 500 S.E.2d 320-21, or that Plaintiff has substantially prevailed against Defendant based on Defendant's payment of the policy proceeds in full, *Jordan*, 393 S.E.2d 647. Even assuming that Plaintiff made a demand and that she substantially prevailed,[4] however, Defendant is still entitled to summary judgment on the bad faith claim because the undisputed evidence shows that an "attorney's services were [not] necessary to obtain payment." Syl. pt. 1, *Jordan*, 393 S.E.2d 647.

It is undisputed that the instant lawsuit was served on Defendant on August 17, 2006 and that the claim was paid in full on August 21, 2006. Defendant has offered evidence to establish that on the date the lawsuit was served, it was assigned to the claims litigation group on August 17, 2006 and first opened and reviewed on August 18, 2006 by Linda Silva, who works in Defendant's litigation unit. (Docket 47-8 ¶ 3.) On August 23, 2006, Ms. Silva opened a new matter in Defendant's computer system. (*Id.* ¶ 4.) Prior to that date, no other employee in Defendant's claims

---

[4] In considering the totality of the circumstances, the Court would not be inclined to find a genuine issue of material fact as to the "substantially prevail" requirement. At no point, either before or after the suit was filed, did Plaintiff make any type of demand for payment. Further, Defendant never offered less than the policy proceeds. The sole delay in this case was the result of the loan account statement not being included when the claim was filed. Once that documentation was obtained and Defendant was able to ascertain the exact amount owed, Defendant paid the policy in full without knowledge of the instant lawsuit. Based on these circumstances, it appears as though Plaintiff did not substantially prevail, however, as stated below, Plaintiff is unable to withstand summary judgment because she has put forth no evidence that payment was a result of the filing of this lawsuit.

department would have had knowledge of the lawsuit. (*Id.*) More importantly, no employee in Defendant's claims department, which was responsible for paying Plaintiff's claim on August 21, 2006, had any actual knowledge of the lawsuit before August 24, 2006. (Docket 47-4 ¶ 10.) Plaintiff has presented no evidence to dispute this.

To prevail on a claim for *Hayseeds* damages, Plaintiff is required to show "more than the fact that a settlement . . . was reached after the action was brought against the insurer." *Jordan*, 393 S.E.2d at 652. The undisputed evidence, however, shows the opposite: that the proceeds were not recovered "but for" Plaintiff's counsel's services, rather, that they were recovered as a result of Defendant's routine processing of a claim where a critical document was missing from the claim file. Once that document was recovered, and before the claims department knew about the lawsuit, the claim was promptly paid in full. There is no evidence of causation. Accordingly, there is no genuine issue of material fact regarding the bad faith claim and Defendant is entitled a judgment as a matter of law on that claim as well.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment [Docket 47] is **GRANTED**. A separate Judgment Order will enter this day implementing the rulings contained herein.

ENTER: July 3, 2008

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE